1    Amy B. Vandeveld, SBN 137904
      LAW OFFICES OF AMY B. VANDEVELD
2    1850 Fifth Avenue, Suite 22
      San Diego, CA  92101
3    Telephone: (619) 231-8883
      Facsimile: (619) 231-8329
4

5    Attorney for KAREL SPIKES

6

7

8            IN THE UNITED STATES DISTRICT COURT

9             SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| 10   KAREL SPIKES, | Case No.: 07 CV 2394 LAB (WMc) |
| 11          Plaintiff, | |
| 12   vs. | **DECLARATION OF AMY B. VANDEVELD IN SUPPORT OF PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS** |
| 13   EUROPEAN CAR SERVICE; ANDREW MACIEJEWSKI; ZENNON SMOCYNSKI and DOES 1 THROUGH 10, Inclusive, | |
| 14 | |
| 15        Defendants. | **[FRCP 12(B)(1)]** |
| 16 | Date:  April 14, 2008 |
| 17 | Time:  11:15 a.m.<br>Courtroom: 9 |
| 18 | Judge: The Honorable Larry A.<br>      Burns |

19       I, AMY B. VANDEVELD, declare:

20       1.      I am not a party to this action.  I am counsel for the Plaintiff, Karel Spikes,

21 in the instant action and am admitted to practice in all courts of this state and the United

22 States District Court, Southern District, Central District, Eastern District and Northern

23 District of California.  I have personal knowledge of the following facts and, if called as a

24 witness, could and would testify to the following:

25       2.      Attached hereto collectively as Exhibit "4" are true and correct copies of the

26 substantive content of correspondence to and from various defense counsel regarding the

27 failure of various defendants to comply with accessibility modifications required by

28 Settlement Agreements in cases filed by Karel Spikes.

3.     It is my understanding that Karel Spikes re-visited and re-visits virtually every facility that he has sued in order to compel compliance with the ADA and/or as a customer or client.  When he finds that a facility has not complied with the Settlement Agreement entered into in a particular case, he contacts me and requests that I take further action to compel accessibility.  In addition to the attached letters that I sent on Mr. Spikes' behalf, I also sent emails and made telephone calls to defense counsel in some of Mr. Spikes' cases, although I do not have written records of those emails and telephone calls.  Earlier in my practice in this area of law, I made a few "courtesy calls" to defense counsel in which I advised that their clients had not completed the modifications required by our Settlement Agreements and I did not memorialize those calls with letters.  Also, I changed computers and I no longer have "Sent" emails from before 2004.  To the best of my recollection, there were approximately 3 or 4 other cases filed by Mr. Spikes in which I made efforts following settlement to compel removal of architectural barriers, that were not memorialized in writing.  While I recall other efforts, I cannot recall the specific cases in which the post-settlement efforts were made.  Each of these efforts were made following notification by Mr. Spikes that architectural barriers continued to exist post-settlement.

4.     Exhibit 4, page 21 accurately reflects the content of a letter I sent to Mr. Zuffoletto on July 12, 2006.  I only recently located this letter on my computer and have been unable to retrieve my copy of the actual letter from the storage facility.  I sent this letter to Mr. Zuffoletto in the Spikes v. Western Towing case (USDC No. 04cv0612 L (POR) because I had been advised by Mr. Spikes that he had re-visited the facility post-settlement and the modifications had not yet been performed.  (In that case, Mr. Spikes' claim arose because his vehicle had been towed to Western Towing and, among other problems, Western Towing had no accessible parking space when he tried to retrieve his vehicle.)  After receiving Mr. Spikes' telephone call, I happened to visit the facility and I confirmed Mr. Spikes' findings.  The Defendant had not actually breached the Settlement

Agreement, however, because we had agreed to a longer period for the modifications, with the Magistrate Judge's assistance. The Defendant had obtained drawings from an architect of various accessibility options, which were attached to the Settlement Agreement. The Defendant needed to obtain building department approval, thus the need for a longer compliance period. Following the date for completion of the modifications, Mr. Spikes and I both confirmed that the modifications had been completed.

5.    The defendant in <u>Spikes v. Country Time Inc. dba Duke's Liquor,</u> USDC No. 03cv1869 L (LSP), despite my strong suggestion otherwise, declined to retain an attorney to represent him because of limited funds. The matter was settled and Mr. Spikes agreed to resolve the case in exchange for the defendant's promise to install an accessible parking space, a commitment that Defendant would ensure the facility's interior aisles were accessible, and a sum of $1,275.00 for damages, fees and costs. (See Plaintiff's Exhibit 1, pages 7 to 9.)  I later provided the Defendant with copies of the pertinent regulations to assist him in ensuring that the work performed by his contractor was appropriate. At that time, the access consultant agreed to waive his fees and the filing fees were only $150.00. Mr. Spikes later confirmed the modifications were completed.

6.    Mr. Spikes settled another case in which the defendant declined to retain an attorney because of limited funds. In that case, the settlement amount was confidential, but the Plaintiff agreed to completely waive his claim for damages and attorney's fees. The only amount recovered was a sum less than $1,000.00 to cover costs actually incurred by the Plaintiff. In every case, the Plaintiff incurs filing fees, service fees and expert fees, which, for the last several years, are paid to the expert following receipt of the expert's report and prior to the filing of the lawsuit. In this case, the Defendant agreed to install an accessible parking space, modify the slope of a ramp and provide an accessible auxiliary counter.

///

7. In a confidential settlement in another case, the Defendant had been sued previously by another plaintiff, represented by a different attorney. The earlier matter was settled, unbeknownst to Mr. Spikes, obviously, and the Defendant agreed to make modifications, but they had not been performed at the time of Mr. Spikes' visit. Further, the modifications I observed at the site meeting required by the Court were insufficient. Mr. Spikes requested, and the Defendant agreed to make, additional modifications at the property, in addition to those performed pursuant to the earlier settlement agreement with the other plaintiff. In exchange, Mr. Spikes completely waived his claim for damages, fees and costs and received no monetary recovery in that case.

8. Attached hereto as Exhibit "5" is a true and correct copy of my letter to defense counsel Spencer C. Skeen. In <u>Spikes v. Robertos</u>, USDC No. 05cv1088, the Defendant insisted on a settlement that allowed it to make "readily achievable" modifications, without specifying the nature of the modifications. My letter set forth Mr. Spikes' position that, unless the agreed-upon modifications were specific and were completed within a reasonable time frame, the matter would not settle, regardless of the monetary amount of the settlement offer. It has always been the position of my clients and, understandably, my practice, that architectural barrier removal is required as a material term of any settlement agreement. The only exceptions were if the barriers had already been removed during the course of the litigation, or if the business planned to close. In those few instances, the Defendants were asked to agree that if another business opened at the site, or if the closing business re-opened, that it would be accessible to people with disabilities prior to conducting business.

9. On several occasions I have rejected cases presented to me by my clients, including Mr. Spikes, because my consultants inspected the facilities and confirmed that modifications were made between the time of the clients' visit and the inspection by the consultants. In those instances, I advise my clients that they may still have claims for damages, but that I will not represent them in those cases. None of my clients has ever

4

asked me to pursue a claim for damages only. In only a few cases have Defendants claimed that barriers were removed prior to the filing of the lawsuit. In those cases, however, the barriers existed at the time of my client's visit and at the later inspection by the consultant and were only removed shortly before the lawsuit was filed and without my knowledge.

10.    Attached hereto as Exhibit "6" is a true and correct copy of my letter to another attorney in which I provided copies of relevant accessibility documents. I provided these documents in an effort to disseminate information about accessibility laws and tax credits available to businesses, to encourage businesses to comply with access laws.

11.    Attached hereto as Exhibit "7" is a true and correct copy of a Certificate of Attendance for Credit for a seminar on the Americans with Disabilities Act that I was asked to conduct for the Ventura County Bar Association in Ventura, California on June 12, 2007. Although I was asked to individually conduct the seminar, I suggested that a defense attorney be included as a presenter to ensure that the defense perspective was properly addressed. I prepared the outline and materials for the seminar.

12.    Attached hereto as Exhibit "8" is a true and correct copy of a page on the San Diego Chamber of Commerce website, advertising an ADA Compliance Seminar, for which I had agreed to serve as a panelist. In about July of 2006, I was advised that the Seminar was being "postponed" because of lack of interest, given that only three Chamber members signed up for the Seminar. On March 20, 2008, I was again contacted by the Chamber and was asked to serve as a presenter for another ADA seminar. I was advised that I was the only panelist from the original seminar who had been asked to participate in the second seminar. Neither a representative from the disabled community nor from the Building Department had been asked to participate in the second seminar. I advised Doug Metz, representative for the Chamber, that I would likely not participate unless a Building Official and a member of the disabled community were invited to

participate, since it is my opinion that these viewpoints are critical to a full understanding and appreciation of accessibility laws and regulations.

13.    I am deeply committed to the enforcement of the ADA and the removal of architectural barriers.  At least one Court has recognized that commitment.  Attached hereto as Exhibit "9" is a true and correct copy of an Order Discharging Order to Show Cause entered in <u>Molski v. Sport Chalet</u> USDC No. CV 04-0358 ER, in which Judge Rafeedie, who had declared Mr. Molski a "vexatious litigant" in a case in which Mr. Molski was represented by another attorney, found that Mr. Molski had standing to pursue his claims in the <u>Sport Chalet</u> case in which I represented Mr. Molski.  The Court held "This case, filed in San Diego in 2003 by a different attorney who appears actively to pursue remedial measures in addition to monetary damages, does not appear to be part of the same abusive pattern.... and this lawyer appears to be pursuing remedial measures as part of the resolution of this case."

14.    I have conducted disability law seminars since 1996.  I was primarily responsible for the preparation, coordination and presentation of seminars at each of the Annual Meetings for the State Bar of California from 1996 to 2001, as well as at the Semi-Annual State Bar Meeting in San Francisco on April 1, 2000.  In the past, I have made presentations to members of the Regional Center of San Diego, the Equal Employment Opportunity Commission and other disability-related organizations.

15.    I was a member of the State Bar of California's Standing Committee on Legal Professionals with Disabilities ("CLPD") from 1996 to 2001.  I served as Vice Chair of that Committee from 1997 to 2000.  I was appointed Chair of the Committee for the 2000-2001 term.  I also served as the liaison for CLPD to the California State Judicial Committee for the 1997 term.  As a member of CLPD, I coordinated and conducted a disability rights seminar in conjunction with the San Diego County Bar Association.

I declare under penalty of perjury under the laws of the State of California and the United States of America that the foregoing is true and correct to the best of my

knowledge.

Respectfully submitted:

Executed this 1st day of April, 2008 at San Diego, California.


/S AMY B. VANDEVELD
Attorney for Plaintiff
Email: abvusdc@hotmail.com