# AMY B. VANDEVELD
**ATTORNEY AT LAW**

LAW OFFICES OF AMY B. VANDEVELD
1850 Fifth Avenue, Suite 22
San Diego, California 92101
Telephone: (619) 231-8883
Facsimile: (619) 231-8329

March 14, 2008

**FOR SETTLEMENT PURPOSES ONLY**
**- CONFIDENTIAL**

*Via Facsimile (619) 440-2233*
Steven A. Elia, Esq.
STEVEN A. ELIA & ASSOCIATES
124 West Main Street, Suite 200
El Cajon, CA 92020

Re:   Spikes v. Sundance Market
      USDC No. 07 cv 605 WQH (BLM)

Dear Mr. Elia:

My client recently re-visited the property and he advises me that the modifications performed at the property, pursuant to the Settlement Agreement, are improper. I have reviewed the photographs provided by my client and have the following concerns:

**Parking**

The newly installed accessible parking space is improperly located and, for whatever reason, the striping is already significantly faded. It appears your client either failed to use enough paint, or used an improper paint. Further, people parking in the space are required to travel behind spaces other than their own to reach the entrance. Also, there are numerous cracks and deep and dangerous holes and elevation changes in the space and access aisle.

The space should be located further to the right of the existing space, closest to the sidewalk in front of the store, so that people parking in the space are not required to go behind another space to reach the sidewalk. It should also be properly painted so that it does not fade in such a short period of time. The space and access aisle should be free of holes, significant cracks and elevation changes.

1

Exhibit 4
21

**Ramp**

With respect to the ramp to the front entrance, rather than correctly modify the existing ramp to the left of the entrance, your client installed an inappropriate ramp at the front entrance. That ramp has no side flares and has a slope in excess of 8.33 percent. Further, photographs of your client's facilities reveal that vehicles routinely park in front of the store, potentially blocking access to the newly installed ramp. The ramp is also located in the vehicular path of travel, which is prohibited by the ADAAG.

It seems to make more sense to widen the previously existing ramp located to the left of the entrance (closer to the currently existing accessible space). The curb at that location should either be painted red or blue to discourage others from blocking the ramp.

Finally, given the problems already noted by my client, I am not confident that your client properly performed the modifications to the interior. Please provide photographs confirming the completion of the aisle width and counter modifications required by the Settlement Agreement. If I do not receive photographs by March 321, 2007, I will travel to the property myself to determine if the modifications have been made. If they have not been completed, I will advise my client to take all necessary action to enforce the Settlement Agreement.

I look forward to hearing from you.

Sincerely,

AMY B. VANDEVELD

2                Exhibit 4

22

# AMY B. VANDEVELD
ATTORNEY AT LAW

LAW OFFICES OF AMY B. VANDEVELD
1850 Fifth Avenue, Suite 22
San Diego, California 92101
Telephone: (619) 231-8883
Facsimile: (619) 231-8329

March 31, 2008   7/12/06

**Via Facsimile: (619) 688-3998**
James M. Zuffoletto, Esq.
O'CONNELL & ZUFFOLETTO, LLP
2635 Camino del Rio South, Ste. 108
San Diego, CA 92108

Re: <u>Spikes v. Western Towing</u>
USDC No. 04 cv 0612 L (POR)

Dear Mr. Zuffoletto:

I wanted to remind you that your client is required to provide accessible parking and an accessible path of travel to the service/cashier counter no later than December 1, 2006. I have recently viewed the premises and the "accessible" parking spaces do not comply with federal and state regulations. I am hopeful that additional modifications are intended by your client.

I will inspect the property after December 1, 2006 to ensure compliance with the Settlement Agreement. If you have any questions, please call me.

Sincerely,

AMY B. VANDEVELD

Exhibit 4
23

# AMY B. VANDEVELD
### ATTORNEY AT LAW

**LAW OFFICES OF AMY B. VANDEVELD**
1850 Fifth Avenue, Suite 22
San Diego, California 92101
Telephone: (619) 231-8883
Facsimile: (619) 231-8329

August 9, 2005

**NOT PRIVILEGED**

*Via Facsimile (619) 236-8827*
Spencer C. Skeen, Esq.
SCHWARTZ SEMERDJIAN HAILE
BALLARD & CAULEY LLP
101 West Broadway, Suite 810
San Diego, CA 92101

Re: Spikes v. Pinal Roberto Robledo, et al.
    USDC No. 05cv1088 BTM (RBB)

Dear Mr. Skeen:

You claim in the Defendant's ENE Statement that, as of August 5, 2005, you had not received the Plaintiff's ENE Statement. You also make a point of saying in the ENE Statement that you had not yet received the "draft Joint Statement" from Plaintiff.

Your efforts to disparage me and my client will be brought to the Court's attention at the ENE Conference.

As you are aware, the Plaintiff's ENE Statement was due on August 5, 2005. It was faxed to you at approximately 2:20 p.m. **on August 5, 2005**. Within 20 minutes of it's fax transmission, you called me to discuss the Statement and to attempt to resolve the case. Moreover, despite your implication to the contrary, the Joint Statement isn't even due until August 19, 2005.

Your claim that you prepared Defendant's ENE Statement on August 5, 2005 **BEFORE** you received the Plaintiff's Statement is unbelievable at best and ethically questionable at worst. The Court's Order does **not** require Defendant to prepare an ENE Statement. You have basically admitted that you have wasted your time and, most likely, have billed your client for work that was unnecessary. I will bring this to the Court's attention as well.

Further, let's be clear about the settlement negotiations in this case. You told me in our telephone conversation that your client would be willing to remove barriers where removal was "readily

1

Exhibit 5
24

achievable." I told you that the offer was too ambiguous and that the Plaintiff would not resolve this case until we had agreed on **specific** barrier removal efforts and a **specific** time frame for removal.

In response, you said that you wanted **a year** for your client to remove the barriers and you offered to have our consultants meet at the site to discuss the barrier removal efforts. You said if they couldn't agree, the Magistrate could make the final determination.

I told you that I would never agree to a year for simple modifications such as installing a parking space. Further, I told you it made no sense to send my consultant to the site. He has already been there. Sending him again would be a waste of money. I told you to have your consultant prepare a report and we could discuss the modifications after that. I also told you that the Plaintiff would never agree to settle the case unless we had agreed to the modifications. I told you that we wanted a specifically enforceable settlement agreement. Finally, I told you that if we could agree at a later time as to the modifications, as suggested by you, there was no reason we could not agree to them now.

You told me that, in the past, you had had your clients enter into "readily achievable" agreements with other attorneys. I told you I wasn't any other attorney and unless my client had a specifically enforceable settlement agreement, which identified the modifications and a reasonable time frame for completion of the modifications, there would be no settlement.

Four days later I received your misleading ENE Statement.

I will tell you once again, there will be no settlement unless we can agree on the modifications to be made at the property. Further, you may want to speak with Dick Semerdjian of your firm. I have had several cases with him in the past. I believe we share a mutual respect for one another and I am certain that he is well aware of my commitment to barrier removal.

If you think that I will advise my client to settle a case with nebulous modification terms, just to "get the money", you are wrong. If your client offered $50,000.00 today to settle, with the same vague modification terms, my client would not accept it.

Go back to your client, find out what modifications will be made, and when, and then we can discuss settlement of this case. Until then, quit misleading the Court and quit disparaging me and my client.

2

Exhibit 5
25

Finally, I left a voice mail message for you today. We are required to meet and confer at the site no later than August 12, 2005. Please let me know when you are available so that we can timely comply with this requirement.

Sincerely,

AMY B. VANDEVELD

3

Exhibit 5

26

# AMY B. VANDEVELD
ATTORNEY AT LAW

**LAW OFFICES OF AMY B. VANDEVELD**
1850 Fifth Avenue, Suite 22
San Diego, California 92101
Telephone: (619) 231-8883
Facsimile: (619) 231-8329

December 15, 2005

Janet Sobel
ATTORNEY AT LAW
P.O. Box 261114
San Diego, CA 92196

Re: ADA Documents

Dear Ms. Sobel:

It was a pleasure speaking with you today. As we discussed, I am providing you with a copy of the ADA Guide for Small Businesses, which is available free of charge from the U.S. Department of Justice. I am also providing an IRS form for the available Disabled Access Credit.

Please call if you have any further questions or comments.

Sincerely,

AMY B. VANDEVELD

1

Exhibit 6
27

# Ventura County Bar Association

## Certificate of Attendance for Credit

Description: (061207) Business Litigation 1CLE!

Date and Time: 6/12/2007 at 12:00 PM through 6/12/2007 at 1:00 PM

Sponsored By: VCBA/Business Lit.

Speaker(s): Featuring Amy Vandeveld and Tina Mangarpan

Location: The Tower Club

Total Credits: 1

| Credit Classification | Credit Hours |
|---|---|
| General | 1 |

By signing below, I certify that I participated in the activity described above and am entitled to claim the following Credit hours.

*I put on seminar.*

Total Credits Earned: 1

| Credit Classification | Earned Credit Hours |
|---|---|
| Credit Classification: General | Hours: 1 |

Signature: /s/ ABV                    Date: 6/12/07

Full Name:

State Bar Number  137904

*3 hrs credit*

Reminder: Keep this record of attendance for 4 years. You may be requested to submit this record of attendance to the Credit Commission.

Printed: 6/12/2007

Exhibit 7

28

This is Google's cache of http://www.sdchamber-members.org/publicpolicy.htm as retrieved on Dec 21, 2007 08:37:01 GMT.
Google's cache is the snapshot that we took of the page as we crawled the web.
The page may have changed since that time. Click here for the current page without highlighting.
This cached page may reference images which are no longer available. Click here for the cached text only.
To link to or bookmark this page, use the following url: http://www.google.com/search?q=cache:smWGkPzRvi4J:www.sdchamber-members.org/publicpolicy.htm+amy+vandeveld&hl=en&ct=clnk&cd=53&gl=us

Google is neither affiliated with the authors of this page nor responsible for its content.

These search terms have been highlighted: **amy vandeveld**


**SAN DIEGO REGIONAL CHAMBER OF COMMERCE**

**Chamber Events** 
Presented By SYCUAN

  

# *ADA Compliance Seminar*

### Do You Know if Your Place of Business is Compliant with State and Federal ADA Guidelines?

Do you know if your place of business is compliant with state and federal ADA guidelines?

**FRIDAY, JULY 28, 2006**
Breakfast Buffet & Program - 7:30 am to 10:00 am

Sheraton San Diego Hotel, Mission Valley
1433 Camino Del Rio South, San Diego, CA 92108
Click here for Map/Directions

**Register Now!**

- Did you know the "Americans with Disability Act (ADA)" was signed sixteen years ago? Do you know if your place of business is compliant with state and federal ADA guidelines? If you don't know, you need to know immediately. Non-compliance could make your business vulnerable to lawsuits.

- The federal American with Disabilities Act (ADA) was signed into law in 1990 establishing "accessibility" standards to accommodate individuals with disabilities. California, too, has established its own set of ADA laws. A key provision in the ADA mandated that all structures, built after January 1993, abide by ADA Standards. However, there are many buildings built prior to 1993 that do not comply with current ADA standards. Buildings built before 1993 are not exempt from ADA guidelines.

- Many businesses unknowingly are not in compliance with ADA regulations, thus vulnerable to ADA lawsuits. For the last several years, hundreds of small businesses throughout the San Diego Region in older neighborhoods have been targets of "ADA lawsuits." Unfortunately, many affected businesses pay the demands of suing attorneys thinking they are safe from the next lawsuit. They are not, that is unless their business complies with the ADA guidelines.

- Chamber's ADA Seminar will have speakers representing the legal and disabled communities, and local government, providing businesses valuable information and resources on ADA compliance.

- The ADA Seminar will help educate businesses on the basics on ADA compliance, which may

Exhibit 8 / 29

help reduce their chances of being sued. Just as important, the seminar will help businesses become more marketable to the disabled community and provide information on various ADA programs and incentives available to businesses.

## PANELISTS

| Isam Hasenin | Julie A. Dunne | Cyndi Jones | Amy Vandeveld |
|---|---|---|---|
| Chief Building Official | Partner | Director | Esquire |
| City of San Diego | Sheppard, Mullin, Richter & Hampton, LLP | The Center for an Accessible Society | Law Office of Amy B. Vandeveld |

$30 Chamber and BID Council Members
$40 Non Members
$220 Table of Eight

**Click Here to Register**

Contact Us

Attendance at this event by a state public official will constitute acceptance of a reportable gift.
© 2006 San Diego Regional Chamber of Commerce

http://209.85.165.104/search?q=cache:smWGkPzRvi4J:www.sdchamber-members.org/publ...　3/7/2008

Exhibit 8 / 30

11/09/2005 11:47 FAX 213 894 0249    US DISTRICT CT    ☒002/006

FILED
CLERK, U.S. DISTRICT COURT
NOV -9 2005
CENTRAL DISTRICT OF CALIFORNIA
DEPUTY

Priority ✓
Send ✓
Enter ____
Closed ____
JS-5/JS-6 ____
JS-2/JS-3 ____
Scan Only ____

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JAREK MOLSKI,<br>Plaintiff,<br>v.<br>SPORT CHALET, Inc., et al.<br>Defendants. | Case No. CV 04-0358 ER<br><br>**ORDER DISCHARGING ORDER TO SHOW CAUSE** |

The Court conducted an evidentiary hearing on November 7, 2005, to determine whether Plaintiff had standing to sue Defendants for violations of the Americans with Disabilities Act ("ADA").

Though the Court finds Plaintiff's testimony to be evasive, dishonest, deceptive, and contrived, the objective evidence introduced at the hearing shows an extensive history of patronage at locations close to his home and is sufficient to establish the minimal requirements for standing to sue for violations of the ADA.

Exhibit 9
31

1    The finding of standing is influenced by the fact
2  that this case originally was filed in the Southern
3  District of California in December, 2003, *prior* to the
4  time Plaintiff's well-documented maelstrom of abusive
5  litigation began.  (Plaintiff filed over 200 ADA
6  claims in 2004 and was declared a vexatious litigant
7  in the Central District of California and California
8  Superior Court.[1]  He filed these lawsuits as a means to
9  obtain extortionate settlements with little or no
10 interest in obtaining remedial measures.[2])
11     This case, filed in San Diego in 2003 by a
12 different attorney who appears actively to pursue
13 remedial measures in addition to monetary damages,
14 does not appear to be part of the same abusive
15 pattern.  Defendants appear to be businesses that
16 Plaintiff patronizes regularly, and this lawyer
17 appears to be pursuing remedial measures as part of
18 the resolution of this case.
19     The finding of standing is limited to <u>the specific
20 facts of this case</u> and does not suggest that Plaintiff
21
22 _____
23 [1]Molski v. Mandarin Touch, 347 F. Supp. 2d 860 861 (C.D. Cal. 2005) (declaring Molski a "vexatious litigant" and requiring that he obtain leave of court prior to filing further ADA
24 claims); Molski v. Mandarin Touch, No. 1172370, slip op. at *2 (Ca. Sup'r Ct. 2005) (same).
25
26 [2]See Molski v. Mandarin Touch, 385 F. Supp. 2d 1042, 1047 (C.D. Cal. 2005) (noting that, in his other cases, Molski's
27 attorney has sent letter threatening lawsuits for spoliation of evidence if any remedial measures are taken.).
28

-2-

Exhibit 9

32

1 may have standing to sue in any other case.

3 THE ORDER TO SHOW CAUSE IS DISCHARGED.
4 IT IS FURTHER ORDERED that the Clerk of the Court
5 shall serve, by United States mail or by telefax or by
6 email, copies of this Order on counsel for the parties
7 in this matter.
8     Dated:   NOV - 9 2005

*[signature]*

EDWARD RAFEEDIE
Senior United States District Judge

- 3 -

Exhibit 9
33